**James and Verna DRUMMOND**

v.

**HILTON HOTEL CORPORATION**

Civ. A. No. 79–1818.

United States District Court,
E. D. Pennsylvania.

July 3, 1980.

**30**

Robert Land, Philadelphia, Pa., for plaintiffs.

Joseph Goldberg, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

GILES, District Judge.

Defendant, Hilton Hotel Corporation ("Hilton"), has moved for summary judgment in this action for damages. Plaintiff, Verna Drummond was injured as the result of a fall in a hotel whose trade name was the Hilton Inn. Hilton asserts that at no time did it maintain, own, control, or operate the hotel and that the record owner was the Creative Development Company ("Creative"), a wholly–owned subsidiary of the Gebco Investment Corporation ("Gebco"). A written agreement which on its face is a license/franchise agreement exists between Hilton and Creative. In that document, Hilton specifically disavows any agency relationship.

Plaintiffs resist Hilton's summary judgment motion asserting the doctrine of apparent agency. They maintain that Hilton held itself out in such a manner as to lead the general public, including hotel guests, to believe they were dealing directly with either Hilton or a servant or employee of Hilton, a hotel corporation of international reputation. Plaintiffs assert that representation of the hotel as a "Hilton Inn" estops Hilton from denying all possessory duties.

Upon careful examination of the controlling authority in this jurisdiction, this court concludes that there are material issues of fact presented regarding the existence of both a real and an apparent agency relationship between Hilton and Creative. Accordingly, for the reasons set forth below, Hilton's motion for summary judgment must be denied.

## I.

It is well–settled that summary judgment cannot be granted except on a clear showing that no genuine issue of fact exists. *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556 (3d Cir. 1980); *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62 (3d Cir. 1978). Hilton maintains that it had no ownership or control of the hotel at the time of plaintiff's accident.

Plaintiff urges that Hilton should be liable for the alleged negligent acts of Creative based on the doctrine of apparent authority as set forth in the Restatement of Agency § 267. Plaintiffs, opposing the instant motion, reference a signed agreement between Hilton and Creative which purports to be a license and franchise agreement. It has a provision which attempts to deny the existence of an agency relationship and to disclaim all liabilities incurred on behalf of the hotel.

"Under Pennsylvania law, when an injury is done by an 'independent contractor,'" the person employing him is generally not responsible to the person injured." *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781, 785 (3d Cir. 1978), citing *Hader v. Coplay Cement Manufacturing Co.*, 410 Pa. 139, 150–51, 189 A.2d 271, 277 (1963). "However, when the relationship between the parties is that of 'master–servant' or 'employer–employee' as distinguished from 'independent contractor–contractee,' the master or employer is vicariously liable for the servant's or employee's negligent acts committed within the scope of his employment." *Drexel*, 582 F.2d at 785, citing *Smalich v. Westfall*, 440 Pa. 409, 415, 269 A.2d 476, 481 (1970). The basic inquiry which the Pennsylvania courts have set forth to determine whether a given person is an employee–servant or an independent contractor is

whether such person is subject to the alleged employer's control or right to control with respect to his physical conduct in the performance of the services for which he was engaged.... The hallmark of an employee–employer relationship is that the employer not only controls the result of the work but has the right to direct the manner in which the work shall be accomplished; the hallmark of an independent contractee–contractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result.

*Drexel,* 582 F.2d at 785, quoting *Green v. Independent Oil Co.,* 414 Pa. 477, 483–84, 201 A.2d 207, 210 (1964). "Actual control over the manner of work is not essential; rather, it is the right to control which is determinative." *Drexel,* 582 F.2d at 785, citing *Coleman v. Board of Education,* 477 Pa. 414, 421–22, 383 A.2d 1275, 1279 (1978).

In *Drexel,* the Third Circuit observed that difficulties exist where the parties occupy the status of franchisor and franchisee. The mere existence of a franchise relationship does not necessarily trigger a finding of a master–servant relationship, nor does it automatically insulate the parties from such a relationship. Whether the control retained by the franchisor is also sufficient to establish a master–servant relationship depends in each case upon the nature and extent of such control as defined in the franchise agreement or by the actual practice of the parties. *Drexel,* 582 F.2d at 786. In *Drexel,* the defendant occupied the status of franchisor by virtue of a signed agreement. Although the franchise bore the name of the defendant, it denied all ownership and control and thus all liability for any negligence on the part of the franchisee. Notwithstanding a written provision in the agreement which stated that the liability of the defendant was strictly limited, the court concluded that other clauses in the agreement could be construed as reserving to the defendant the right to control certain facets of the franchise. For example, there were clauses requiring the franchisee to operate under the name of the defendant/franchisor, granting the defendant the right of inspection, and requiring that the franchise operate as part of a national organization securing its strength through adherence to defendant's "uniformly high standards of service, appearance, quality of equipment, and proved methods of operation." Id. 787. Such clauses prompted the court to state that it could not hold as a matter of law that a master–servant relationship did not exist.

In the agreement between Hilton and Creative, Hilton has the right to consult with Creative on operating problems concerning the hotel, the right to inspect the hotel to maintain the standards of the Hilton system. Creative is required to feature Hilton's name in all advertising and promotional material. The agreement does have a clause limiting Hilton's liability. Yet, as stated in *Drexel,* the mere fact that there is express denial of the existence of an agency relationship is not in itself determinative of the matter. *Id.* 786. Since such a denial of agency is not sufficient to relieve Hilton of all possible liability as a matter of law, the issue of Hilton's right to control any operations of the hotel is an issue for jury determination.

## II.

Plaintiff's contention that Hilton should be liable for the alleged negligent acts of Creative, irrespective of an actual agency relationship, is based on the doctrine of apparent agency as set forth by the Restatement (Second) of Agency § 267 (1975), which provides as follows:

One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

*Accord,* Restatement of Agency § 267.

Plaintiffs cite *Taylor v. Costa Lines, Inc.,* 441 F.Supp. 783 (E.D.Pa.1977), for the proposition that Pennsylvania law would adopt

this section of the Restatement. Hilton asserts that the Pennsylvania courts have traditionally rejected the application of this principle to tort actions.[1] The Third Circuit in *Drexel* agreed with the decision of the trial court in *Taylor*, and concluded that the Supreme Court of Pennsylvania would adopt § 267 or some similar principle of apparent agency. *Drexel*, 582 F.2d at 791–94. Hilton could therefore be liable under this doctrine if the plaintiff makes a showing that Hilton represented Creative to be its servant and that plaintiff justifiably relied on such representation.

In *Gizzi v. Texaco, Inc.*, 437 F.2d 308 (3d Cir.) (applying New Jersey law), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 57 (1971) while citing § 267, the court concluded that a question of apparent authority existed where a gas station was neither owned nor operated by Texaco but prominently displayed the Texaco insignia and slogan and where Texaco had engaged in national advertising, the effect of which could be found to instill confidence in Texaco gas stations. In *Drexel*, the Court also concluded that there were sufficient indicia of authority to raise questions of fact as to whether the elements of apparent agency had been established. Among these indicia were provisions in the franchise agreement which required the franchisee to use the name of the defendant/franchisor in all promotional and advertising materials. 582 F.2d at 795–96.

In the instant case, plaintiffs reference to provisions in the license/franchise agreement between Hilton and Creative which require Creative to "disclose in all dealings with suppliers and persons, other than guests, that it is an independent entity and that Licensor [Hilton] has no liability for debts," and "Feature in the Hotel operation, in the guest rooms, public rooms and other public areas of the Hotel, and on the various articles therein as specified in the Operating Manual and in advertising and promotional material, the name 'Hilton'".

Therefore, this court concludes that whether Hilton held itself out to the public as the owner or operator of the Hilton Inn is a proper issue of fact for determination by a jury.

---

1. Hilton cites *Janeczko v. Manheimer*, 77 F.2d 205 (7th Cir. 1935) and *Trautwein v. Loeb*, 19 Pa.D. & C. 394 (Phila.Co.1933). These cases were specifically distinguished in *Drexel*, 582 F.2d at 791 n.14.